*683 OPINION.
Phillips:
Taxpayer claims that it is entitled to classification as a personal service corporation under the provisions of section 200 of the Revenue Act of 1918. The evidence discloses that all of the stockholders of the appellant corporation were regularly engaged in the active conduct of its affairs and that the only other employee was a stenographer and bookkeeper. The only thing that the corporation had to sell was the service and advice of its stockholders and under the circumstances there can be no doubt that the income is to be ascribed primarily to their activities.
The income was not derived from trading as a principal. The evidence discloses that the corporation, whose principal income was from commissions upon advertising, did not purchase and sell advertising space in bulk but only placed orders for space as directed by its clients, in each case naming the client. Space contracted for but not used by the advertiser named could not be used by another advertiser or disposed of in any way by the advertising agent. It could only be canceled, in which event charge for the space already used would be recomputed upon the basis of the rate for such amount of space, known as the short rate.
We come then to consider the only remaining qualification required under the definition of a personal service corporation, namely: Is capital, (whether invested or borrowed) a material income-producing factor? It is not sufficient to defeat personal service classification that capital be used in the business or that capital be incidental to the production of the income. The capital must be a material factor in producing income. Capital must be of such use that the production of income would be materially lessened without it.
In this connection it is urged that the contract between the publisher and the advertising agent is such that the advertising agent is responsible for the payment of all bills for advertising, that recognition is extended only to agencies having good financial standing and that capital is necessary to obtain recognition as an agency and for use in paying for space used by advertisers.
It is our opinion that the matter of either the theoretical or legal liability, so long as the agent is not a principal dealing in the purchase and sale of space, has little to do with the question which we must decide. In determining whether capital is or is not a material income-producing factor, we must look to the use to which capital is put in the business. One agency, with no legal responsibility to pay the publisher for the advertising of its clients, may follow a consistent practice of making such payments and permitting credit facilities to its clients. This extension of credit may be such as to *684 balance the scales in its favor as against another such agency which will not finance the obligations of its clients. In such a case capital is so used as to be material in securing and retaining income-producing business. Under such circumstances, if used to produce sufficient business, capital becomes a material income-producing factor. Another agency may expressly contract with the publisher to make itself liable for the payment for the advertising of its clients; yet if it so operates its business that collections are promptly made from the clients and it becomes unnecessary to use its capital to perform the obligation it has undertaken, capital has not become a material income-producing factor. The use of capital has been potential only. The fact that a business has capital, or in certain contingencies might require capital, is not sufficient to deny personal service classification, if in fact capital is not used to produce income; the use to which capital is put is the controlling factor.
The evidence here discloses that during a period of eight months the corporation transacted business aggregating over $200,000, or $25,000 per month. The difference between the cash discounts received and the amount allowed to the clients was $808.70, which at the usual cash discount of 2 per cent would indicate that in eight months $40,000 had been paid to publishers prior to payment to the petitioner, an average of $5,000 per month. There were, however, other expenses incurred and paid on behalf of clients and the evidence would indicate the use of from $10,000 to $20,000 in the business. As to the balance sheet at the end of 1920, it appears that the accounts receivable represented the account of Chase & Company, a client who had originally retained Conover on a salary basis and desired his services, not for any credit he could extend, but because it had confidence in his ability.
The net income of the corporation, before payment of salaries, appears to have been $28,803.03. There was paid from this the salary of a stenographer, $100 per month for eight months, leaving $28,000 attributable to the services of stockholders and to capital. Average capital employed, whether invested or borrowed, was less than $20,000. Even this amount appears to have been unnecessary, and its use produced at most only $800 of income. Twice this amount was received from retainer fees, having no reference to the placing of any advertising or the payment of any bills.
In these days of magazines with a national circulation reaching into millions of copies and the cost of advertising space into thousands of dollars per page, the preparation of such advertising and the selection of the proper media in which it is to appear has come to be recognized as a business or profession requiring skill and experience, and it was in such business that the taxpayer was principally engaged. On the whole record we are of the opinion that *685 the primary income-producing factor was tire experience and advice of Conover, that capital was not a material income-producing factor and that such capital as was used was merely incidental to the services rendered in planning and carrying out sales and advertising campaigns.

Derision will be entered for the petitioner on 10 days' notice, under Rule 50.

Milliken and Sterntiacen concur in the result only.